**2022 IL 127256**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 127256)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
BRANDON JACKSON, Appellee.

*Opinion filed September 22, 2022.*

JUSTICE OVERSTREET delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Theis, Neville, Michael J. Burke, and Carter concurred in the judgment and opinion.

Justice Holder White took no part in the decision.

**OPINION**

¶ 1     A Cook County jury convicted defendant, Brandon Jackson, of first degree murder and attempted armed robbery. After the jury returned its signed verdict forms in open court, defendant's attorney asked the circuit court to poll the jury. The circuit court then asked 11 of the 12 jurors whether the verdicts reflected on

the verdict forms were their verdicts. All of the 11 jurors who were questioned confirmed that the signed verdict forms accurately reflected their verdicts. The circuit court then committed clear or obvious error by dismissing the jury without polling the twelfth juror. The defendant, however, forfeited review of this polling error by failing to object to the error before the circuit court dismissed the jury and by failing to include the error in a posttrial motion. Defendant raised the error for the first time on direct appeal. The appellate court held that the error in polling the jury constituted structural error that called into question the integrity of the judicial process. The appellate court, therefore, excused defendant's forfeiture under the second prong of Illinois's plain error rule and reversed defendant's conviction. One justice dissented, concluding that the error does not rise to the level of second-prong plain error. For the following reasons, we reverse the appellate court's judgment and affirm the circuit court's judgment.

¶ 2                                    I. BACKGROUND

¶ 3        In the evening on December 20, 2013, Cuauhtemoc Estrada, who was an investigator for the Cook County Sheriff's Office, rented the Veterans of Foreign Wars (VFW) banquet facility in Bellwood, Illinois, for a Christmas party for his friends and family. As Estrada's daughter approached the VFW facility on foot with her date, Rigoberto Anaya, two armed robbers approached the couple and demanded that Anaya "give [them] all [his] shit." Estrada saw the attempted robbery taking place. He approached the armed robbers, identified himself as a police officer, and reached for his handgun. One of the armed robbers shot and killed Estrada, and both robbers fled the scene. The police investigation led to the eventual arrest and conviction of defendant for first degree murder of Estrada and attempted armed robbery of Anaya. The jury also found that defendant was the assailant who discharged the firearm that killed Estrada during the attempted robbery.

¶ 4        The circuit court sentenced defendant to 60 years in prison for first degree murder (which included a 25-year firearm enhancement) and 5 years in prison for attempted armed robbery. The circuit court ordered the 60-year sentence for first degree murder to run consecutively with the 5-year sentence for attempted armed robbery for a total of 65 years in prison.

¶ 5        The circuit court's instructions to the jury, prior to deliberations, informed the jury that its verdicts must be unanimous. The record on appeal includes the verdict forms bearing the signatures of all 12 jurors and reflecting guilty verdicts for the two offenses as well as the jury's verdict on the firearm enhancement, *i.e.*, finding that defendant discharged the firearm that killed Estrada. After the jury returned the signed verdict forms in open court, the circuit court asked, "Counsels, do you wish to have the jury polled?" Defendant's counsel responded, "Yes." The circuit court then separately asked 11 of the 12 jurors the following question, "Was this then and is this now your verdict?" All 11 jurors independently responded, "Yes." The circuit court then dismissed the jury without polling the twelfth juror.

¶ 6        Defendant's attorney did not object to the dismissal of the jury prior to polling the twelfth juror or otherwise bring this error to the circuit court's attention. Defendant filed a posttrial motion requesting a new trial on various grounds, but the posttrial motion did not raise any issue concerning the jury polling error. The circuit court denied defendant's posttrial motion as well as defendant's motion to reconsider the sentences.

¶ 7        Defendant appealed, raising an issue with respect to the polling error for the first time and issues relating to his sentence. In response, the State agreed that the incomplete jury polling was clear or obvious error but argued that defendant forfeited review of the error by not objecting at trial or raising the issue in his posttrial motion. In reply, defendant agreed that he failed to preserve this error for appellate review but asked the appellate court to excuse his forfeiture under the second prong of Illinois's plain error rule. 2021 IL App (1st) 180672, ¶¶ 18, 20.

¶ 8        The appellate court majority agreed with defendant and held that the circuit court's failure to poll all 12 jurors constituted second-prong plain error. *Id.* ¶ 47. The appellate court, therefore, excused defendant's forfeiture, entered a judgment reversing defendant's convictions and sentences, and remanded for a new trial. *Id.* ¶ 19.

¶ 9        In concluding that the error constituted second-prong plain error, the appellate court majority noted that, in Illinois, defendants have an absolute right to poll the jury. *Id.* ¶ 27. In addition, the appellate court concluded that the right to poll the jury could not be waived by counsel and was recognized as a basic right in our system of justice. *Id.* ¶¶ 27-28. According to the appellate court majority, "jury

polling is not only *a* procedural device designed to ensure the unanimity of the jury's verdict; it is *the* procedural device for accomplishing that goal." (Emphases in original.) *Id.* ¶ 32. The majority reasoned, "the only way to ensure that all 12 jurors adhere to the signatures they affixed to the jury forms is to ask each one whether he or she remains resolute in the verdict." *Id.* ¶ 46. The majority, therefore, concluded that a complete and proper jury poll was essential to a fair criminal trial and that the polling error, in and of itself, was prejudicial regardless of the strength the evidence establishing defendant's guilt. *Id.* ¶¶ 35-37. Accordingly, the majority held that the polling error constituted second-prong plain error, which required reversal of defendant's convictions and remand for a new trial. *Id.* ¶ 47.

¶ 10    Justice Coghlan disagreed with the majority, concluding that the jury polling error did not affect the fairness of defendant's trial or the integrity of the proceedings and, therefore, did not constitute second-prong plain error. *Id.* ¶ 58 (Coghlan, J., dissenting). The dissenting justice concluded, "Under the factual circumstances of this case, where there is no evidence that the jury verdicts were not unanimous, the inadvertent failure to poll 1 of the 12 jurors did not prejudice [defendant's] right to a unanimous jury." *Id.* ¶ 63.

¶ 11    We allowed defendant's petition for leave to appeal pursuant to Illinois Supreme Court Rule 315 (eff. Oct. 1, 2020).

¶ 12                                    II. ANALYSIS

¶ 13    The issue we are asked to determine in this appeal is whether defendant's forfeiture of the jury polling error should be excused under the second prong of Illinois's plain error rule.

¶ 14                              A. Forfeiture Principles

¶ 15    We have long held that, for a criminal defendant to preserve an issue for review on appeal, the defendant must object at trial and raise the issue in a written posttrial motion. *People v. Reese*, 2017 IL 120011, ¶ 60. Failure to do so forfeits any review of the error. *Id.* We require this of defendants because failure to raise the issue at trial deprives the circuit court of an opportunity to correct the error, thereby wasting

time and judicial resources. *People v. McLaurin*, 235 Ill. 2d 478, 488 (2009). This forfeiture rule also prevents criminal defendants from sitting idly by and knowingly allowing an irregular proceeding to go forward only to seek reversal due to the error when the outcome of the proceeding is not favorable. *People v. Ford*, 19 Ill. 2d 466, 478-79 (1960); *People v. Carlson*, 79 Ill. 2d 564, 577 (1980) ("counsel, by not giving the court the opportunity to prevent or correct error at trial, will gain the advantage of obtaining a reversal through his own failure to act, either intentionally or inadvertently"). Therefore, we have held that a proper objection is fundamental to our adversarial system of justice (*Carlson*, 79 Ill. 2d at 576), and a criminal defendant who fails to object to an error and raise the error in a posttrial motion has forfeited the error, precluding review of the error on appeal (*People v. Herron*, 215 Ill. 2d 167, 175 (2005)). More specifically, with respect to errors in polling the jury, we have previously held that "[a]ny objection to the polling of jurors should be made at the time of the polling, and a failure to do so results in [forfeiture]." *People v. McDonald*, 168 Ill. 2d 420, 462 (1995).

¶ 16    Here, defendant acknowledges that he forfeited the polling error by failing to object and failing to raise the issue in his posttrial motion. However, on direct appeal, defendant maintained, and the appellate court agreed, that his forfeiture was excusable under the second prong of the plain error rule.

¶ 17                    B. The Plain Error Rule Exception to Forfeiture Principles

¶ 18    Illinois's plain error rule is a narrow exception to forfeiture principles. *People v. Moon*, 2022 IL 125959, ¶ 21. Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967) sets out the plain error rule as follows: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." The purpose of the rule is to protect the defendant's rights and the integrity of the judicial process. *Herron*, 215 Ill. 2d at 177. The rule has been designed as "a means of meliorating the harshness of the strict application" of the general forfeiture rule. *People v. Pickett*, 54 Ill. 2d 280, 282 (1973).

¶ 19    The plain error rule does not call for the review of all forfeited errors. *People v. Precup*, 73 Ill. 2d 7, 16 (1978). Instead, the rule permits review of a forfeited error only if the error falls under the purview of one of two alternative prongs: (1) where the evidence in a case is so closely balanced that the jury's guilty verdict may have

resulted from a clear or obvious error and not the evidence or (2) when a clear or obvious error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. *Moon*, 2022 IL 125959, ¶ 20. The two prongs of the plain error rule can be described as the standards for Illinois courts to consider in deciding whether to excuse forfeiture. *Herron*, 215 Ill. 2d at 180 n.1. Under both prongs, the defendant has the burden of persuading the court to excuse his forfeiture. *Moon*, 2022 IL 125959, ¶ 20.

¶ 20                                    C. Clear or Obvious Error

¶ 21        When a defendant invokes the plain error rule, the first step in the analysis is to determine whether a clear or obvious error occurred. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). As the appellate court majority below explained, long ago, in *Nomaque v. People*, 1 Ill. 145, 150 (1825), this court recognized that defendants have a right to have jurors polled. We have also explained that, "[w]hen a jury is polled, each juror should be questioned individually as to whether the announced verdict is his own." *People v. Kellogg*, 77 Ill. 2d 524, 527-28 (1979). The circuit court should conduct the poll in a manner that will "obtain an unequivocal expression from each juror" that he or she "truly assents to the verdict." *Id.* at 528. "[I]f a juror indicates some hesitancy or ambivalence in his answer, then it is the trial judge's duty to ascertain the juror's present intent by affording the juror the opportunity to make an unambiguous reply as to his present state of mind." *Id.* Here, there is no dispute that the circuit court inadvertently committed clear or obvious error when it polled only 11 of the 12 jurors.

¶ 22                             D. The Two Prongs of the Plain Error Rule

¶ 23        The next step in plain error analysis depends on which prong of the plain error rule the defendant has cited as justification for excusing his forfeiture of the error. Under the first prong of the plain error rule, when the evidence of a defendant's guilt is closely balanced, "there is the possibility that an innocent person may have been convicted because of some error which is obvious in the record, but which was not properly preserved for review." *People v. Green*, 74 Ill. 2d 444, 454 (1979) (Ryan, J., specially concurring). The conviction of an innocent person due to an error during the pretrial or trial proceedings would be a miscarriage of justice;

therefore, a reviewing court may consider the forfeited error under the first prong of the plain error rule when the evidence is closely balanced. *Id.* In other words, errors reviewable under the first prong of the plain error rule are the type of errors that are subject to harmless error analysis, and a defendant must establish prejudice resulting from the error to excuse his forfeiture of such an error. *Herron*, 215 Ill. 2d at 187 (stating that the defendant must prove the error was prejudicial under the first prong of the plain error rule).[1]

¶ 24 In contrast, under the second prong of the plain error rule, the reviewing courts are not concerned with "prejudicial" error. *Id.* at 186-87. Instead, the concern under the second prong of the plain error rule is addressing unpreserved errors that undermine the integrity and reputation of the judicial process regardless of the strength of the evidence or the effect of the error on the trial outcome. *Moon*, 2022 IL 125959, ¶¶ 26-27. "[W]hen a trial error is of such gravity that it threatens the integrity of the judicial process, the courts must act to correct the error so that the fairness and the reputation of the process are preserved and protected." *Id.* ¶ 27. For errors that fall under the purview of the second prong of the plain error rule, prejudice is presumed. *Herron*, 215 Ill. 2d at 187.

¶ 25 In the present case, defendant has invoked only the second prong of the plain error rule. Accordingly, our analysis focuses exclusively on the standards for excusing forfeiture under the second prong of Illinois's plain error rule. Whether defendant's forfeiture of the circuit court's clear or obvious error in polling the jury in this case is excusable under the second prong of the plain error rule is a question of law that we review *de novo*. *People v. Johnson*, 238 Ill. 2d 478, 485 (2010).

---

[1]Analysis under the first prong of the plain error rule typically requires the same type of analysis as harmless error review. Harmless error analysis applies when the defendant has properly preserved a trial error for review; plain error analysis applies when the defendant has failed to preserve a trial error for review. The difference between harmless error analysis and first-prong plain error analysis is the allocation of the burden of persuasion. Under the first prong of the plain error rule, the defendant bears the burden of persuasion with respect to showing prejudice due to the error. Under harmless error analysis, the State has the burden of persuasion to show a lack of prejudice despite the error. *People v. Thurow*, 203 Ill. 2d 352, 363 (2003).

¶ 26                    E. The Second Prong of the Plain Error Rule
                           Requires a Showing of Structural Error

¶ 27        Because defendant has invoked only the second prong of the plain error rule,
       he is asking us to excuse his forfeiture of the circuit court's error without a showing
       that the error caused him prejudice or affected the outcome of the trial. Before
       analyzing defendant's forfeiture request in the present case, we first emphasize, as
       we have done so repeatedly, that the plain error rule is "a narrow and limited
       exception" to procedural default. *People v. Downs*, 2015 IL 117934, ¶ 15.
       Moreover, the errors that fall under the purview of the second prong of the plain
       error rule are rare. *People v. Rivera*, 227 Ill. 2d 1, 19-20 (2007) (citing *Washington
       v. Recuenco*, 548 U.S. 212, 218-19 (2006)); *United States v. Olano*, 507 U.S. 725,
       734 (1993) ("In most cases, a court of appeals cannot correct the forfeited error
       unless the defendant shows that the error was prejudicial."). Accordingly,
       defendant is asking us to excuse his forfeiture under a narrow and limited rule and
       under a prong of the limited rule that rarely applies.

¶ 28        The second prong of the plain error rule can be invoked "only in those
       exceptional circumstances where, despite the absence of objection, application of
       the rule is necessary to preserve the integrity and reputation of the judicial process."
       *People v. Herrett*, 137 Ill. 2d 195, 214 (1990). This court has equated the second
       prong of the plain error rule with "structural error." *Thompson*, 238 Ill. 2d at 613-
       14 (citing *People v. Glasper*, 234 Ill. 2d 173, 197-98 (2009)). It is a type of error
       that "erode[s] the integrity of the judicial process and undermine[s] the fairness of
       the defendant's trial." *Herron*, 215 Ill. 2d at 186. Unlike an error reviewable under
       the first prong of the plain error rule, if a defendant succeeds in establishing that
       structural error occurred, he need not show that he was prejudiced by the error. *Id.*
       at 187. Instead, regardless of the strength of the evidence of the defendant's guilt,
       prejudice to the defendant is presumed because of the importance of the right
       involved. *Id.*

¶ 29        The United States Supreme Court has explained that "[t]he purpose of the
       structural error doctrine is to ensure insistence on certain basic, constitutional
       guarantees that should define the framework of any criminal trial." *Weaver v.
       Massachusetts*, 582 U.S. ___, ___, 137 S. Ct. 1899, 1907 (2017). The structural
       errors identified by the Supreme Court include a complete denial of counsel, denial

of self-representation at trial, trial before a biased judge, denial of a public trial, racial discrimination in the selection of a grand jury, and a defective reasonable doubt instruction. *Recuenco*, 548 U.S. at 218 n.2. The commonality of these errors is that they affect the framework within which the trial proceeds, rather than mere errors in the trial process itself. *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991).

¶ 30　　　　In determining whether an error is structural for purposes of applying the second prong of Illinois's plain error rule, we often look to the types of errors that the United States Supreme Court has found to be structural error and determine whether the error being considered is similar. *Moon*, 2022 IL 125959, ¶ 30. However, we have not limited the second prong of Illinois's plain error rule to only those types of errors identified as structural by the Supreme Court. *Id.* Instead, we may find an error to be structural as a matter of state law independent from the categories of errors identified by the Supreme Court. *Id.*

¶ 31　　　　Here, our task is to determine whether the polling error that occurred in this case is an error of such magnitude that it undermines the framework within which the trial proceeds, rather than a mere error in the trial process itself (*Fulminante*, 499 U.S. at 310), thereby excusing defendant's forfeiture of the error without him having to show prejudice.

¶ 32　　　　　　　　　　F. Criminal Defendant's Right to Poll the Jury

¶ 33　　　　A criminal defendant's right to request a polling of the jury is a safeguard that is designed to help ensure that the defendant is afforded an important constitutional right, *i.e.*, juror unanimity. In *Ramos v. Louisiana*, 590 U.S. ___, ___, 140 S. Ct. 1390, 1396-97 (2020), the United States Supreme Court held that the sixth amendment's right to a jury trial requires a unanimous verdict to convict a defendant of a serious offense.[2] Long before *Ramos*, this court held that the right to a jury trial that is guaranteed to criminal defendants in Illinois's constitution includes juror unanimity. *People v. Lobb*, 17 Ill. 2d 287, 298 (1959) ("The right of

---

[2]The sixth amendment of the United States Constitution applies to the states through the fourteenth amendment (U.S. Const., amends. VI, XIV). *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968); *Ramos*, 590 U.S. at ___, 140 S. Ct. at 1397 ("So if the Sixth Amendment's right to a jury trial requires a unanimous verdict to support a conviction in federal court, it requires no less in state court.").

trial by jury as it existed at common law [and guaranteed by section 5 of article II of the Illinois Constitution (Ill. Const. 1870, art. II, § 5)] is the right to have the facts in controversy determined *** by the *unanimous* verdict of twelve impartial jurors who possess the qualifications and are selected in the manner prescribed by law." (Emphasis added.)).

¶ 34    The practice of polling the jury after the jury has submitted a signed verdict form is directly tied to this constitutional right. As we have explained, the procedure is used to confirm that the signed verdict form accurately reflects each juror's vote and that the juror's signature on the verdict form was not the result of coercion. *McDonald*, 168 Ill. 2d at 462. This practice is "rooted deep in our common law," and its purpose is to ensure the verdict is in fact unanimous. *People v. McGhee*, 2012 IL App (1st) 093404, ¶ 15.

¶ 35                    G. Error in Polling the Jury Is a Trial Error,
                              Not a Structural Defect

¶ 36    Although polling the jury is designed to safeguard a fundamental right, this conclusion alone does not establish that an error in polling the jury is structural error. The criminal trial process includes numerous rules and procedures that are designed to ensure that a criminal defendant receives a fair trial as guaranteed by the federal and state constitutions. Not all errors in applying or omitting these pretrial and trial rules and procedures constitute structural error that are reviewable under the second prong of Illinois's plain error rule. See, *e.g.*, *Glasper*, 234 Ill. 2d at 193 ("The violation of a supreme court rule does not mandate reversal in every case."). In addition, as the Supreme Court has held, most constitutional errors themselves do not automatically require reversal of a conviction but are subject to harmless error review. *Fulminante*, 499 U.S. at 306.

¶ 37    Errors that are subject to harmless error analysis are categorized as mere "trial errors" rather than structural defects. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006) (describing the two classes of constitutional errors as "trial error" and "structural defects"); *Fulminante*, 499 U.S. at 306-07 (stating that "trial error" is not "structural error" and is subject to harmless error analysis); *People v. Patterson*, 217 Ill. 2d 407, 424 (2005) (stating that most constitutional errors are

not "structural defects" and, instead, are "trial errors"). We must determine which category an error in polling the jury falls under.

¶ 38    In analyzing whether the polling error in the present case amounted to trial error or structural error, we are guided by our analysis set out in *Glasper*. In *Glasper*, during jury selection for a murder trial, the circuit court committed clear error in failing to conduct *voir dire* in accordance with the requirements of Illinois Supreme Court Rule 431(b) (eff. May 1, 1997) and *People v. Zehr*, 103 Ill. 2d 472 (1984). *Glasper*, 234 Ill. 2d at 185. Rule 431(b) and *Zehr* require the circuit court, during *voir dire*, to ask each prospective juror whether the juror understands and accepts four principles: (1) that the defendant is presumed innocent of the offenses charged; (2) that the State must prove the defendant's guilt beyond a reasonable doubt; (3) that the defendant is not required to present any evidence; and (4) that the defendant is not required to testify, and if he chooses not to do so, jurors may not draw any negative inferences from this fact. *Thompson*, 238 Ill. 2d at 606; *Zehr*, 103 Ill. 2d at 477.[3]

¶ 39    In *Glasper*, the circuit court committed clear error when it failed to question the prospective jurors concerning their understanding and acceptance of the principle that a defendant's decision not to testify cannot be held against him. *Glasper*, 234 Ill. 2d at 188-89. The defendant in *Glasper* did not testify, and he argued on appeal that the circuit court's failure to comply with Rule 431(b) denied him his right to a fair trial before an impartial jury. *Id.* at 189. The defendant argued that prejudice due to this error must be presumed because it would be impossible for a reviewing court to assess the prejudicial impact of the error. *Id.*

¶ 40    The *Glasper* court, therefore, had to determine whether the circuit court's error "requires us to presume prejudice and automatically reverse defendant's conviction, or whether the error is subject to harmless-error analysis." *Id.* In other words, similar to the analysis in the present case, the *Glasper* court had to determine whether the holding in *Zehr* created a new category of structural error. *Id.* at 190,

_____

[3]We note, parenthetically, that the version of Rule 431(b) at issue in *Glasper* required the circuit court to ask each of the *Zehr* questions *only* if asked by the defendant. This court later modified the rule requiring the circuit court to ask all prospective jurors whether they both accepted and understood each of the *Zehr* principles regardless of any request to do so by the defendant. Ill. S. Ct. R. 431(b) (eff. May 1, 2007).

199-200. Similarly, in this case, we must determine whether to expand the structural error doctrine to include the circuit court's incomplete jury poll.

¶ 41    In analyzing whether the error was structural, the *Glasper* court held that the circuit court's error did "not involve a fundamental right, or even a constitutional protection." *Id.* at 193. Instead, the *Glasper* court concluded, the error involved a right available only by rule of this court and a right that, at the time of the defendant's trial, was available only to those defendants who requested it. *Id.* Although the defendant in *Glasper* argued that the error in failing to ask venire members if they would harbor a bias against him if he chose not to testify resulted in a violation of his constitutional right to a fair and impartial jury, this court rejected this argument, holding that "[d]efendants do not have a right to Rule 431(b)(4) questioning under either the United States or the Illinois Constitution." *Id.* at 196. While the rule is certainly designed to help ensure that defendants are tried before a fair and impartial jury, we declined to hold that the Rule 431(b)(4) question omitted by the circuit court was indispensable to a fair trial and results in a presumption that the jury was biased. *Id.*

¶ 42    The *Glasper* court added, "It would be inconsistent to conclude that the failure to question the venire in compliance with Rule 431(b)(4) ensures that biased jurors will be impaneled when a defendant can choose to forgo such questioning, apparently without such concerns." *Id.* at 196-97. Instead of the error being structural, the court concluded that it could review the record and determine that the error was harmless beyond a reasonable doubt. *Id.* at 202-03. Accordingly, it was a trial error.

¶ 43    Likewise, in *Thompson*, 238 Ill. 2d at 610, we again held that, "[w]hile trial before a biased jury is structural error subject to automatic reversal, failure to comply with Rule 431(b) does not necessarily result in a biased jury." The *Thompson* court noted that, although the circuit court violated Rule 431(b), "there is no evidence that defendant was tried by a biased jury," particularly where the jurors were otherwise admonished and instructed on Rule 431(b) principles. *Id.* at 611. To conclude that the error resulted in a biased jury would require the court " 'to presume that citizens sworn as jurors ignore the law and the jury instructions given to them.' " *Id.* at 610 (quoting *Glasper*, 234 Ill. 2d at 201).

¶ 44    Applying the *Glasper* and *Thompson* courts' analyses in the present case, we conclude that the circuit court's error in polling the jury is not structural error. In *Glasper*, the defendant argued that the error denied him his constitutional right to a fair and unbiased jury. *Glasper*, 234 Ill. 2d at 196. Here, defendant claims he was denied his constitutional right to a unanimous jury. We rejected the defendant's argument in *Glasper* and, likewise, reject defendant's argument in the present case. We conclude, similar to our conclusion in *Glasper*, that neither the federal constitution nor our state's constitution affords a criminal defendant a constitutional right to poll the jury. Instead, the right to poll the jury is a rule established by our state's common law and is a procedure that is available only to those defendants who request it.

¶ 45    In reaching this conclusion, we note that federal appellate courts have held that polling the jury in a criminal trial is not a constitutional right. See *United States v. Miller*, 59 F.3d 417, 419 (3d Cir. 1995) (stating that a jury poll is "not of constitutional dimension"); *United States v. Sturman*, 49 F.3d 1275, 1282 (7th Cir. 1995) ("The right to poll a jury is indeed a substantial right, but it is not a constitutional right."); see also *Rhea v. Jones*, 622 F. Supp. 2d 562, 593 (W.D. Mich. 2008) ("The Bill of Rights is silent on the issue of polling a jury, and the Supreme Court has never articulated any constitutional requirements under the Due Process Clause. To the extent that the Court has spoken on the subject, its cases indicate that a jury poll is not constitutionally required." (citing *Humphries v. District of Columbia*, 174 U.S. 190, 194 (1899))). In addition, we are not aware of any decision by the United States Supreme Court that holds or suggests that jury polling is a constitutional right under the federal constitution.

¶ 46    While the right to have the jury polled, on request, is designed to help ensure that a defendant has been afforded his right to a unanimous jury, we decline to hold that polling the jury is indispensable to a fair trial. An error in polling a jury is better suited for harmless error analysis because there are other safeguards in place to ensure juror unanimity, including the circuit court's instructions to the jurors that their verdict must be unanimous, the requirement that all jurors have individually signed the jury verdict form, and the requirement that the signed verdict form is returned and pronounced in open court in the presence of the jury. See *United States v. Martinez-Salazar*, 528 U.S. 304, 311 (2000) (in finding that the denial of the use of a peremptory challenge was not structural error, the Court reasoned that

- 13 -

peremptory challenges were only one way to ensure that a jury is unbiased and other mechanisms are in place to ensure the fairness of a jury trial).

¶ 47　　　When the record is otherwise devoid of any indication of a lack of juror unanimity, a jury polling error alone does not justify reversing a conviction on the fear of denial of the right to juror unanimity. Accordingly, we conclude that the jury polling error in this case was not structural error. As the *Glasper* court reasoned, it would be inconsistent to conclude that a jury polling error denies a defendant of his right to juror unanimity when defendants can choose to forgo jury polling without any such concerns. *Glasper*, 234 Ill. 2d at 196-97. As we similarly stated in *Thompson*, a verdict lacking juror unanimity is "structural error subject to automatic reversal," but an error in polling the jury "does not necessarily result in" the denial of the right to juror unanimity. *Thompson*, 238 Ill. 2d at 610. An error in polling the jury does not make it inevitable that the jury's verdict was not unanimous, particularly when there is no indication in the record giving rise to such a concern. *Id.* at 611. The polling error may be assessed in the context of other safeguards and procedures that took place during the trial to ensure juror unanimity, focusing the analysis on the underlying fairness of the trial. Accordingly, the error is not structural.

¶ 48　　　In reaching our conclusion, we are persuaded by the appellate court's analysis in *People v. Sharp*, 2015 IL App (1st) 130438, *McGhee*, 2012 IL App (1st) 093404, and *People v. Flores*, 2021 IL App (1st) 192219. In *Sharp*, the circuit court polled only 10 of the 12 jurors, and the *Sharp* court analyzed this error under the plain error rule. *Sharp*, 2015 IL App (1st) 130438, ¶ 111. The court held that the error does not fall under the second prong of the plain error rule, stating that "[t]he court's failure to poll the jury on defendant's request is not the kind of error that mandates reversal regardless of whether the defendant was prejudiced by the error." *Id.* ¶ 112. In concluding that the error was amenable to harmless error analysis, the court noted that no juror objected when the verdict was announced, the 2 unquestioned jurors were present during the polling and did not voice an objection, the answers of the polled jurors did not indicate any dissent from the other 2 jurors, and all 12 jurors signed the verdict forms. *Id.* The court highlighted these facts to establish that "[t]he court's failure to poll the jury on defendant's request is not the kind of error that mandates reversal regardless of whether the defendant was prejudiced by

- 14 -

the error because it does not affect the fairness of a defendant's trial or challenge the integrity of the judicial process." *Id.*

¶ 49 We find the reasoning in *Sharp* to be persuasive because it is consistent with *Glasper* and *Thompson*. It is also consistent with the United States Supreme Court's analysis with respect to the application of the harmless error doctrine to nonstructural errors. *Martinez-Salazar*, 528 U.S. at 311. Structural error "def[ies] analysis by 'harmless-error' standards." *Fulminante*, 499 U.S. at 309. As the *Sharp* court's analysis establishes, an error in polling the jury is, in fact, amenable to harmless error analysis and, therefore, is not structural error. When the trial process includes other mechanisms to ensure juror unanimity, we can conclude, by evaluating the record, whether the defendant's trial was fundamentally fair even though an error in polling the jury occurred. Accordingly, defendant's forfeiture of the jury polling error in the present case would be properly evaluated for prejudice under the first prong of the plain error rule. The polling error standing alone, however, is not a basis for excusing forfeiture without a showing of prejudice under the second prong of the plain error rule, since second-prong plain error can be invoked only for structural errors that are not subject to harmless error analysis.

¶ 50 In *McGhee*, after the jury returned its verdict, defense counsel asked the circuit court to poll the jury, but the circuit court erred in dismissing the jury without conducting the requested poll. *McGhee*, 2012 IL App (1st) 093404, ¶¶ 16-17. In analyzing this error under the second prong of the plain error rule, the *McGhee* court, applying the *Glasper* court's analysis, held that polling the jury was a procedural device designed to help ensure that the jury's verdict is unanimous but was not an indispensable prerequisite to a fair trial. *Id.* ¶ 26. In concluding that the error was not structural but was amenable to harmless error analysis, the court noted that all 12 jurors signed three different guilty verdict forms, the verdicts were returned in open court, there was nothing in the record to suggest that the verdicts were not unanimous, and there were no other irregularities surrounding the return of the verdicts. *Id.* ¶¶ 26, 32-33. The polling error alone did not affect the fairness of the defendant's trial or the integrity of the judicial process and, therefore, was not structural error. *Id.*

¶ 51 Finally, in *Flores*, the circuit court polled only 11 of the 12 jurors, and the court analyzed whether to excuse forfeiture of this error under the second prong of the

- 15 -

plain error rule. *Flores*, 2021 IL App (1st) 192219, ¶¶ 7-9. In holding that the error did not fall under the purview of the second prong of the plain error rule, the *Flores* court reasoned that a jury poll is not a necessary element of all criminal trials but is, instead, available for only those defendants who request it. *Id.* ¶ 15. While a defendant has a fundamental right to a unanimous verdict against him, polling the jury is not an additional fundamental right or indispensable for ensuring a fundamental right but is one of several procedural safeguards, similar to the rule addressed in *Glasper*. *Id.* ¶¶ 15-16. The *Flores* court concluded, "The trial court's inadvertent failure to poll one juror does not rise to the level of an error so serious that it affected the fairness of the trial, nor does it call into question the integrity of the judicial process." *Id.* ¶ 18.

¶ 52    In reaching the conclusion that the error was not structural but akin to those errors subject to harmless error analysis, the *Flores* court emphasized that the jurors in that case were instructed that their verdict must be unanimous, none of the 12 jurors dissented or hinted at any equivocation when the 11 jurors were polled, all 12 jurors signed the verdict form, all 12 jurors were present during the jury polling, and "there were no indications whatsoever that there was anything other than full jury unanimity." *Id.* ¶ 19. The *Flores* court also noted that this was the type of error that could have been easily addressed and resolved with a proper objection and that reversing a defendant's conviction under the second prong of the plain error rule would provide the defendant an "escape hatch" for a new trial after an unfavorable result without offering "even a scintilla of evidence that there was potential dissent among the jurors." *Id.* ¶ 21. The error in failing to comply with this procedural safeguard, without more, cannot be equated with a denial of the underlying fundamental right to a unanimous jury. *Id.* ¶ 16.

¶ 53    We agree with the appellate court's analyses set out in *Sharp*, *McGhee*, and *Flores*, and conclude that defendant in the present case has not established second-prong plain error. Polling the jury, in and of itself, is not a fundamental right but is merely a safeguard for ensuring juror unanimity. An error in the polling process is the type of error that is amenable to harmless error analysis. Therefore, forfeiture of the polling error can be excused under first-prong plain error standards, not under second-prong plain error standards.

¶ 54    In addition to the Illinois Appellate Court's analyses discussed above, we are also persuaded by decisions from other jurisdictions that have found that similar polling errors are not structural errors. For example, in *State v. Bey*, 975 N.W.2d 511, 516 (Minn. 2022), the trial court polled only 11 of the 12 jurors after the defendant requested jury polling. The Supreme Court of Minnesota held that the error was not structural error, noting that the only precedent it could find that holds such an error to be structural was the appellate court's decision in the present case. *Id.* at 517 (citing 2021 IL App (1st) 180672). According to the *Bey* court, every other decision "agrees with the reasoning of *Sharp*, *McGhee*, and *Flores*," including a decision issued by the Supreme Court of Arizona in *State v. Diaz*, 224 P.3d 174 (Ariz. 2010) (*en banc*). *Bey*, 975 N.W.2d at 518. The Supreme Court of Minnesota agreed with "the weight of authority" in concluding "that jury polling is but one mechanism to ensure a unanimous jury verdict, such that an error in polling the jury does not categorically create a violation of the constitutional right to a unanimous jury." *Id.*

¶ 55    The *Bey* court concluded that the right to poll the jury is not found in either the Minnesota or United States Constitutions but originated as a common-law *option* "*done at the request of a party*" and that the error in polling was not the equivalent to the denial of a unanimous jury verdict. (Emphasis added.) *Id.* at 518-19. "The jury instructions, comments and instructions from the [trial] court, the conduct of the jurors, and the lack of objections also served to guarantee the integrity of the trial." *Id.* at 520. Therefore, the Supreme Court of Minnesota declined to elevate the error to structural error status because "it is possible to evaluate whether the alleged polling error affected the result" of the trial. *Id.*

> "[I]f polling the jury is simply one mechanism to ensure that [the defendant's] rights were respected, then an error in the jury polling does not give rise to a violation of the constitutional right to a unanimous jury so long as the record contains other evidence sufficient to establish that the verdicts returned by the jury were proper." *Id.* at 517.

The court stated that, at most, the defendant established an error in the jury polling process, not a denial of juror unanimity. *Id.* at 519.

¶ 56    Likewise, in *People v. Anzalone*, 298 P.3d 849, 851 (Cal. 2013), the Supreme Court of California held that a trial court's failure to comply with a rule that

required the court to ask the jury foreperson or the jurors to affirm their verdicts was not structural error. In that case, a California statute provided: " 'When the jury appear they must be asked by the Court, or Clerk, whether they have agreed upon their verdict, and if the foreman answers in the affirmative, they must, on being required, declare the same.' " *Id.* (quoting Cal. Penal Code § 1149 (West 2008)). The trial court failed to ask the jury foreperson or the jurors to affirm their verdicts after the verdicts were read out loud. *Id.* at 852. The Supreme Court of California had to determine whether this oversight constituted structural error. *Id.* at 851. It concluded that it was not. *Id.*

¶ 57     The *Anzalone* court noted that the error was analogous to "an incomplete polling of the jury" and held that the defendant's failure to object resulted in forfeiture of the error. *Id.* at 853. In analyzing whether the error constituted structural error, the court explained the distinction between a structural error and a trial error, noting "[t]o our knowledge, the United States Supreme Court has never suggested that the lack of an oral acknowledgement of the verdict in open court is a structural defect." *Id.* at 855.

¶ 58     The court acknowledged that a unanimous jury was a core constitutional right. *Id.* at 856. However, the court also noted that there was no indication in the record in that case that the jury was not unanimous, as it was instructed on the requirement of unanimity and the jury foreperson returned signed verdict forms. *Id.* No juror objected when the verdicts were read, and neither party requested polling. *Id.*

¶ 59     "In the absence of some indication to the contrary, it is presumed the jury followed the instructions [that jury unanimity was required,]" and the trial court did not "give any instruction that undermined the unanimity mandate." *Id.* "To call what transpired here structural error would be to expand that notion beyond any example articulated by the United States Supreme Court, and elevate form over substance." *Id.* at 857. The court concluded, "[d]espite the trial court's error here, nothing in the record indicates that defendant's trial was in any way unfair" (*id.*) and that the trial court's failure to follow the statutorily mandated jury polling procedure did not deprive the defendant of his constitutional right to a unanimous jury (*id.* at 859). The court further explained:

> "Many statutes *** set out procedures designed to protect constitutional principles. Broadly construed, many of these procedural statutes may be said to

protect due process and other constitutional safeguards. Nevertheless, most procedural shortcomings constitute trial error. Indeed, most *constitutional violations themselves* are subject to harmless error review, particularly if, as here, a defendant had counsel and was tried by an impartial adjudicator." (Emphasis in original.) *Id.* at 856 (citing *Fulminante*, 499 U.S. at 306-07).

¶ 60       In *Anzalone*, the defense counsel failed to request jury polling but the polling, nonetheless, was required by statute. Accordingly, the significance of *Anzalone* is that the trial court in that case, like the circuit court in the present case, was obligated to poll the jury but an error occurred in that process. In the present case, the circuit court polled 11 of 12 jurors, and in *Anzalone*, the trial court polled none of the jurors.

¶ 61       We find the courts' structural error analyses in *Bey* and in *Anzalone* to be consistent with this court's analysis in *Glasper* and *Thompson* and, therefore, highly persuasive in determining whether structural error occurred in this case. See also *People v. Lewis*, 296 N.W.2d 209, 211 (Mich. Ct. App. 1980) ("In the case sub judice, there was an oversight in polling one of the jurors. This error easily could have been corrected if the defendant had brought it to the trial court's attention, but this was not done. We hold that, *absent manifest injustice*, we will not review a claim of jury polling irregularity when there has been no objection lodged at trial." (Emphasis added.)).

¶ 62       Defendant argues that our recent decision in *Moon* supports the conclusion that the polling error in this case constitutes structural error under the second prong of Illinois's plain error rule. In *Moon*, we held that swearing in the jury with a trial oath was guaranteed by our state's constitution. Specifically, we held that swearing the jury with a trial oath was guaranteed by article I, section 13, of the Illinois Constitution, which provides that "[t]he right of trial by jury as heretofore enjoyed shall remain inviolate." Ill. Const. 1970, art. I, § 13; *Moon*, 2022 IL 125959, ¶ 60. In addition, we held that failure to administer the constitutionally required oath constituted structural error and, thus, forfeiture of the error was excusable under the second prong of the plain error rule. *Moon*, 2022 IL 125959, ¶¶ 62-64.

¶ 63       At first glance, there are similarities between the error we addressed in *Moon*, which we held was structural, and the polling error in the present case, which we now hold is not structural. Both errors touch upon a fundamental right. The jury

- 19 -

oath concerns the fundamental right to juror impartiality, and the jury polling process concerns the fundamental right to jury unanimity. In addition, both the jury trial oath and the jury polling process have roots in our state's common law. However, there are crucial distinctions between these two aspects of a criminal jury trial that justify different treatment.

¶ 64    As we explained in *Moon*, the " 'heretofore enjoyed' " clause in the Illinois Constitution preserves only the " 'essential' " elements of the common-law jury trial. *Id.* ¶ 48. We determined that swearing the jury with a trial oath was essential to a criminal jury trial because it affects the very framework within which the trial proceeds. *Id.* ¶ 62. The moment the jury takes the trial oath is the moment that the defendant is placed in jeopardy. *Id.* ¶ 67. We reasoned that an error that prevents jeopardy from attaching "cannot be logically categorized as a mere trial error." *Id.* ¶ 70. In addition, our conclusion that such an error is structural was also influenced by the extent to which our state's common law, the federal common law, and the common law of our sister states have long considered the jury oath to be an essential element of the criminal jury trial and an important step in ensuring the impartiality of persons selected as jurors. *Id.* ¶¶ 56-60. We also highlighted language of the United States Supreme Court that suggests that swearing the jury with a trial oath was an important part of the federal constitution's guarantee of the right to an impartial jury. *Id.* ¶ 59.

¶ 65    In contrast, the history of the jury polling process establishes that it is not an essential element of the framework within which a criminal trial proceeds but is an optional common-law safeguard that is not utilized without a party's request. Under both Illinois and federal law, a criminal defendant is required to request polling of the jury. *People v. Hanna*, 2 Ill. App. 3d 672, 674 (1971) (defendant has a right to poll the jury but waives such right by failure to make timely request that the jury be polled); *United States v. Randle*, 966 F.2d 1209, 1214 (7th Cir. 1992) (the Federal Rules of Criminal Procedure "do not require a poll unless a party requests it"); see also *Lewis*, 296 N.W.2d at 211 ("While the right to poll the jury is protected by statute, it is not an absolute right and may be waived if not promptly asserted."); *Archer v. State*, 105 So. 747, 748 (Miss. 1925) ("A litigant, against whom a jury verdict has been rendered, has ordinarily a right to a poll of the jury, and a request therefor should be granted, if it is possible for the court to do so. [Citation.] It is not a right, however, which is vital ***."). In some jurisdictions, polling the jury is left

to the discretion of the trial court. See *Commonwealth v. Hardy*, 727 N.E.2d 836, 845 (Mass. 2000) (" 'When a verdict is returned and before the verdict is recorded, the jury may be polled *in the discretion of the judge*.' " (Emphasis added.) (quoting Mass. R. Crim. P. 27(d) (eff. July 1, 1979))).

¶ 66     A procedure that is not required in every criminal jury trial cannot be logically categorized as an essential element of every criminal jury trial on par with the jury trial oath that was at issue in *Moon*. As stated above, we are not aware of any United States Supreme Court precedent that holds or suggests that a criminal defendant is denied the fundamental right to juror unanimity when jury polling does not take place or when there is an error in the jury polling process. We cannot conclude that a defendant is denied the fundamental right to juror unanimity merely because the jury was not polled after all 12 jurors signed the verdict form and returned the verdict in open court. Otherwise, jury polling would be required in every criminal trial regardless of whether the procedure is requested.

¶ 67     In *Moon*, we noted the "long and storied history" of administering the jury oath as an essential element of a criminal trial. *Moon*, 2022 IL 125959, ¶ 62. In contrast, the process of polling the jury does not have the same storied history of essentialness, as it is merely a safeguard procedure that is designed to further the fundamental right of juror unanimity and is one of several safeguards to ensure this right. Jury polling itself is not a fundamental constitutional right preserved in our state's constitution or in the federal constitution. Accordingly, the jury polling process is not part of the very framework in which the trial process proceeds.

¶ 68     In arguing that the harmless error doctrine does not apply to the polling error, defendant cites *United States v. F.J. Vollmer & Co.*, 1 F.3d 1511 (7th Cir. 1993). *Vollmer*, however, is not persuasive. The analysis in *Vollmer* consists of a mere sentence adopting the holding in *Virgin Islands v. Hercules*, 875 F.2d 414 (3d Cir. 1989). *Vollmer*, 1 F.3d at 1522 ("Failure to poll the jury upon a timely request is 'per se error requiring reversal.' " (quoting *Hercules*, 875 F.2d at 418)). In *Hercules*, the trial court permitted the defendant, following a request for a poll, to review the jurors' signatures on the verdict forms but refused to ask each juror, individually, if the verdict was his or hers. The *Hercules* court determined that this procedure did not satisfy the requirements of Rule 31(d) of the Federal Rules of

Criminal Procedure and that such failure constituted "*per se* error requiring reversal." *Hercules*, 875 F.2d at 418-19.

¶ 69    However, as we have noted above, federal appellate courts have held that, under federal law, the right to poll the jury is not of constitutional dimension. *United States v. Shepherd*, 576 F.2d 719, 724 (7th Cir. 1978). We cannot determine how or why the *Hercules* court concluded that the failure to conduct a proper poll in that case required reversal *per se*. The *Hercules* opinion is silent regarding the reasoning or analysis that led the court to that conclusion. In *Vollmer*, the Seventh Circuit followed *Hercules* without elaboration in stating that the failure to conduct a poll constitutes *per se* error. *Vollmer*, 1 F.3d at 1522-23. We decline to follow cases relying on the *Hercules* court's conclusion, including *Vollmer*, given the lack of reasoning or analysis. Accord *People v. Masajo*, 49 Cal. Rptr. 2d 234, 237 (Ct. App. 1996) (declining to follow *Hercules* and *Vollmer* and requiring a defendant to show prejudice when a trial court improperly fails to poll each juror).

¶ 70    Defendant also argues that this court's decision in *Kellogg*, 77 Ill. 2d 524, requires excusing his forfeiture of the polling error under the second prong of the plain error rule. However, the *Kellogg* court was concerned with the circuit court's refusal to answer when a juror asked, " 'Can I change my vote?' " *Id.* at 527. The *Kellogg* court stated, "The sole question on review is whether the response of [the] juror, during the polling of the jury, *cast doubt on the unanimity of the verdict*." (Emphasis added.) *Id.* The circuit court repeatedly asked the juror, " '[w]as this then and is this now your verdict?' " until the unsure juror answered, " 'Yes, sir.' " *Id.* Accordingly, the *Kellogg* court's concern was the significant ambiguity with respect to the juror's vote and the record reflecting reasons to believe that the juror would not have voted to convict but for the trial court's conduct. Under these circumstances, this court's concern was not a mere polling error but whether the defendant was denied his fundamental right to juror unanimity. *Id.* at 530 ("The record does not *** reflect that the verdict of guilty was a unanimous verdict."). *Kellogg* does not elevate all jury polling errors to the level of structural error without regard to the effect of the outcome of the trial.

¶ 71                                    H. Summary

¶ 72    "[T]he central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence." *Delaware v. Van Arsdall*, 475 U.S. 673, 681

(1986). "The thrust of the many constitutional rules governing the conduct of criminal trials is to ensure that those trials lead to fair and correct judgments." *Rose v. Clark*, 478 U.S. 570, 579 (1986). Courts apply the harmless error doctrine to most errors, constitutional and otherwise, to promote the public's confidence and respect for the criminal process by focusing on the underlying fairness of the criminal trial rather than on the presence of inconsequential error. *Van Arsdall*¸ 475 U.S. at 681. As we have explained above, while there are some errors to which the harmless error doctrine does not apply, these are rare exceptions and not the common rule. See *Clark*, 478 U.S. at 579.

¶ 73      For the reasons we have explained, the polling error in this case does not rise to the level of structural error requiring a reversal of the defendant's conviction without regard to prejudice or the impact of the error on the trial result. Here, the circuit court's inadvertent failure to poll 1 of the 12 jurors does not compare with the kinds of errors that automatically require reversal of an otherwise valid conviction. Unlike a jury trial oath, which we analyzed in *Moon*, a jury poll is not an essential element of a fair trial. If it were essential, it would be required in every trial regardless of whether it was requested by the defendant. We decline to expand the second-prong plain error rule to encompass an error in executing this, albeit important, nonessential process. Instead, the error can be evaluated under harmless-error standards, and therefore, if the error is forfeited, it must be analyzed for prejudice under first-prong plain error standards. Here, defendant has invoked only the second prong of the plain error rule, which does not apply.

¶ 74                              III. CONCLUSION

¶ 75      For the foregoing reasons, the judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed. The cause is remanded to the appellate court for consideration of defendant's unaddressed arguments relating to his sentence. See 2021 IL App (1st) 180672, ¶ 18.

¶ 76      Appellate court judgment reversed.

¶ 77      Circuit court judgment affirmed.

¶ 78        Cause remanded.

¶ 79        JUSTICE HOLDER WHITE took no part in the consideration or decision of this case.