2025 IL App (1st) 220845-U

No. 1-22-0845

February 28, 2025

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 11 CR 4848-02 |
| | ) | |
| RAUL SEGURA-RODRIGUEZ, | ) | The Honorable |
| | ) | Joseph M. Claps, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Presiding Justice Mikva and Justice Navarro concurred.

**ORDER**

¶ 1        *Held*: We reverse and remand for a new trial, as both parties agree that we must, where the defendant was found guilty by an unsworn jury.

¶ 2        Defendant Raul Segura-Rodriguez was convicted after a jury trial of two counts of first degree murder, one count of attempt murder, three counts of armed robbery, two counts of aggravated discharge of a firearm and one count of aggravated battery. At sentencing, defendant received two natural-life terms, as well as additional sentences. The charges stemmed from a multiple slaying inside a Chicago apartment on the afternoon of February 26,

2011, resulting in the murder of two victims, Joel Diaz and Romero Mendoza, and the attempted murder of Luis Levya-Garcia, who later testified.

¶ 3         On appeal, the State concedes that defendant was found guilty by an unsworn jury and that this error requires reversal and a remand for a new trial. For the reasons explained below, we reverse and remand, as both parties agree that we must.

¶ 4         After the State's concession that a reversal was required, defendant asked this court (1) for leave to file a response to the State's concession and (2) requesting that the appellate court still address two issues. On March 15, 2024, the appellate court filed an order granting only his first request. After due consideration, and for the reasons explained below, we decline defendant's second request to issue an advisory opinion

¶ 5                                        BACKGROUND

¶ 6         The State's evidence at trial established that the murders on February 26, 2011, occurred while defendant, Arturo Ibarra, and Augustin Toscano—the three alleged perpetrators—were under police surveillance. Due to a prior triple homicide in April 2010 and a prior quadruple homicide in September 2010, the police had started surveilling suspect Ibarra. On the afternoon of February 26, 2011, the date of the murders here, a police team followed defendant, Ibarra, and Toscano to a CVS store where a cashier confirmed that they purchased Swiffer wipes and duct tape. Shortly after the purchase, the three men entered an apartment building, and so did the three victims, namely, Diaz, Mendoza, and Levya-Garcia, who was the only one who survived.

¶ 7         Levya-Garcia testified that, after the six of them entered an apartment, Toscano handed guns to defendant and Ibarra, and Toscano had a knife. Defendant and Ibarra pointed their guns and told the victims to lie on the floor. Ibarra tied the victims' hands behind their

backs with the victims' belts. Both Toscano and Ibarra looked through cabinets and drawers, and Toscano asked the victims for money. After Ibarra discovered a bag in the garbage can, he said, "I got it," and then told Toscano to tape the victims' mouths which Toscano did. Then Toscano slit the victims' throats, one by one.[1] After the three offenders left the apartment, Levya-Garcia kicked a neighbor's door, and the neighbor called 911.

¶ 8      The police, who were outside the apartment building, observed defendant, Ibarra and Toscano exit the building. After receiving a call about a shooting, two uniformed officers in a marked squad car attempted to curb the vehicle in which defendant and the other two offenders were riding. The police were met with gunfire, and during the ensuing chase and gunfire exchange, Ibarra was shot and killed. Defendant and Toscano were arrested.

¶ 9      From the vehicle, police recovered two guns, a knife with blood, Swiffer packages wrapped in duct tape, gloves with blood, and $55,000 in cash. From the apartment, the police recovered the bodies, baggies with white powder, digital scales and some cash. Forensic evidence later established, among other things, that the blood on the knife belonged to murder victim Mendoza, that blood stains on defendant's boots and jeans came from murder victim Diaz, and that murder victim Mendoza was a likely contributor to another blood stain on defendant's boots.

¶ 10      Police conducted electronically recorded interviews (ERIs) of defendant both during the evening after the arrest and the following evening. Prior to trial, the trial court suppressed the first ERIs on the ground that the Miranda warnings had been insufficient, but the court admitted portions of the second ERIs due to fresh warnings. After trial, defendant argued, as

---

[1] In his statement to police, defendant placed the blame of slitting the victims' throats on the deceased Ibarra, instead of codefendant Toscano.

he had before trial, that this admission was error, and the trial court denied defendant's posttrial motion for a new trial on the sole ground that "the evidence in this case is overwhelming."

¶ 11     Prior to trial, the State also moved to admit evidence of the prior murders in April 2010 and September 2010. The trial court denied admission of the April evidence but admitted the September evidence as part of a common scheme.  The trial court instructed the jury that the evidence regarding this other offense was being received "on the issue of defendant's identity, intent, knowledge, motive or absence of mistake" and that it could be considered by the jury "only for these limited purposes." After trial, defendant argued, as he had before trial, that the admission of this other-crimes evidence was error.  As noted, the trial court denied his posttrial motion for a new trial solely on the ground of overwhelming evidence.

¶ 12     After instruction, the jury found defendant guilty of the charges.  At sentencing on May 24, 2022, defendant received two mandatory natural-life sentences and additional imprisonment terms. Defendant's motion to reconsider his sentence was denied on June 6, 2022, and a notice of appeal was filed that same day.

¶ 13     On October 20, 2023, defendant filed his appellate brief alleging, among other things, that the case had to be remanded for a new trial because he was found guilty by an unsworn jury.  On January 17, 2024, the State moved for a limited remand to the trial court for a hearing on why the report of proceedings did not reflect the administration of the jury oath.[2] On May 23, 2024, this court granted the State's motion and ordered the trial court to hold a

---

[2] Defendant objected to the State's motion, albeit the day after this court had already granted it. However, this court nonetheless considered defendant's objections and found that this court's limited remand order still "stands."

hearing on this limited issue on or before February 27, 2024. This court further ordered the State to file a status report on or before March 5, 2024.

¶ 14    Per this court's order, the State promptly filed a status report on February 28, 2024, reporting that, after a hearing, the trial court determined that the jury was not sworn before the commencement of defendant's trial. In its report, the State conceded that "the failure to swear in the jury before trial is a structural error that requires reversal and a new trial."

¶ 15    Attached to the State's status report was a typed "Factual Findings" statement signed by the trial court judge.[3] The findings stated, in relevant part, that:

> "After viewing the transcript of October 18, 2021, in People v. Raul Segura-Rodriguez, as well as the court reporter's corresponding audio recording for that proceeding, this Court finds that the jury was not sworn before the commencement of trial. The State has listened to the audio and does not dispute that the jury was not sworn."

¶ 16    In response, defendant sought "[1] to file a response to the State's status report and concession that a new trial is required and [2] request that arguments II and III be litigated on appeal."[4]  In a one-judge order on March 15, 2024, this court permitted defendant's first request, stating that it granted only "[a]ppellant's motion for leave to file a response to the State's status report and concession."  However, the order did not address his second request, thereby leaving that question for the subsequent three-judge panel.

¶ 17                                    ANALYSIS

---

[3] This judge was not the judge who presided over defendant's trial.
[4] On March 13, 2024, defendant attempted to file a response, but this court issued an order, stating that the response was "stricken as the response was filed-stamped prematurely, without a proper accompanying motion." On March 14, 2024, defendant filed a motion and, the next day, this court permitted the filing of his response, as described in the text.

¶ 18    Both parties agree that reversal and remand is required based on the trial court's factual finding that the jury was not sworn prior to the commencement of trial.

¶ 19    The trial court's factual findings were made pursuant to Illinois Supreme Court Rule 329 (eff. July 1, 2017). Although a civil appeals rule, Rule 329 "has been made applicable to criminal cases pursuant to Illinois Supreme Court Rule 612(b)(7) (eff. July 1, 2017." *People v. Williams*, 2020 IL App (3d 180024, ¶ 23. Rule 329 rule provides in relevant part that "[t]he record on appeal shall be taken as true and correct unless shown to be otherwise and corrected in a manner permitted by this rule." Ill. S. Ct. R. 329 (eff. July 1, 2017). The rule further provides that "[a]ny controversy as to whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by that court." Ill. S. Ct. R. 329 (eff. July 1, 2017). That is exactly what happened here: the controversy was "submitted to" the trial court and "settled by that court,' which found that the jury in the case at bar was not sworn prior to the commencement of trial. Pursuant to Rule 329, we now proceed with the appeal taking this point as established fact.

¶ 20    Both parties agree that this error requires reversal under the second prong of the plain error rule. "Illinois's plain error rule is a narrow exception to forfeiture principles." *People v. Jackson*, 2022 IL 127256, ¶ 18. "[T]he rule permits review of a forfeited error only if the error falls under the purview of one of two alternative prongs: (1) where the evidence is so closely balanced that the jury's guilty verdict may have resulted from a clear or obvious error and not the evidence or (2) when a clear or obvious error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *Jackson*, 2022 IL 127256, ¶ 19.

¶ 21    Defendant seeks review only under the second prong. Whether the second prong of the plain error rule applies is a question that we review *de novo*. *Jackson*, 2022 IL 127256, ¶25. Our supreme court has found that the swearing-in of the jury with a trial oath is a right guaranteed by our state's constitution. *Jackson*, 2022 IL 127256, ¶ 62; *People v. Moon*, 2022 IL 125959, ¶ 60. Article I, section 13, of our state constitution provides that "[t]he right of trial by jury as heretofore enjoyed shall remain inviolate." Ill. Const. 1970, art. I, § 13. Our supreme court has held that section 13 preserves the essential elements of the common-law jury trial, and that the swearing-in is one such essential element. *Jackson*, 2022 IL 127256, ¶¶ 64, 67; *Moon*, 2022 IL 125959, ¶¶ 48, 62. As a result, our supreme court has repeatedly found that the failure to administer the constitutionally required oath constitutes second-prong error. *Jackson*, 2022 IL 127256, ¶ 62; *Moon*, 2022 IL 125959, ¶¶ 62-64. Second-prong error, in turn, "requires a reversal regardless of the effect of the error on the outcome of the trial." *Moon*, 2022 IL 125959, ¶ 74

¶ 22    Thus, pursuant to binding supreme court precedent, we have no choice but to reverse defendant's convictions and remand to permit a new trial.

¶ 23    In the case at bar, defendant does not argue that retrial is barred by double jeopardy, nor could he. See U.S. Const., amend V; Ill. Const. 1970, art I, § 10; *People v. Moon*, 2022 IL 125959, ¶ 67 (both the federal and Illinois constitutions have clauses barring a defendant from being put in jeopardy twice for the same offense); *People v. Lopez*, 229 Ill. 2d 322, 366-67 (2008) (a reviewing court is bound "to consider the double jeopardy implications" when ordering a retrial). However, both the Illinois Supreme Court and the United States Supreme court "have plainly established that, under both constitutions, jeopardy does not attach until the jury is selected and sworn," which did not happen in this case. *Moon*, 2022 IL 125959, ¶

67.  Thus, despite an otherwise full evidentiary proceeding, jeopardy never attached in the proceeding below, and "the State may retry the defendant for the same offense." *Moon*, 2022 IL 125959, ¶ 68.

¶ 24      Defendant also asks to resolve two additional issues that he raised on appeal.  He challenges both the admission of his statements and the admission of other crimes evidence. As a general rule, courts of review in Illinois do not render advisory opinions or consider issues when the result on appeal will not be affected. *Commonwealth Edison Co. v. Illinois Commerce Commission*, 2016 IL 118129, ¶ 10; *Pielet v. Pielet*, 2012 IL 112064, ¶ 56 ("courts should refrain from deciding an issue when resolution *** will have no effect on the disposition of the appeal presently before the court.").  See also *People v. Brown*, 236 Ill. 2d 175, 195 (2010); *People v. Turner*, 2024 IL App (4th) 230641, ¶ 29; *People v. Trutenko*, 2024 IL App (1st) 232333, ¶ 123.  We will not review cases merely to establish a precedent or guide future litigation. *Commonwealth Edison Co.* 2016 IL 118129, ¶ 10. While a reviewing court may exercise its discretion to reach out and decide issues that are " 'likely' " to recur on remand, here the trial court's ultimate ruling was simply that the overwhelming evidence in this case rendered any alleged evidentiary error harmless. *People v. Johnson*, 2022 IL App (1st) 201371, ¶¶ 169-70 (quoting *Pielet*, 2012 IL 112064, ¶ 56).  Since the evidence may change at retrial, we decline to consider the evidentiary issues that defendant now raises.

¶ 25                                    CONCLUSION

¶ 26      For the foregoing reasons, and with the agreement of both parties, this court reverses defendant's convictions and remands for a new trial.

¶ 27        Reversed and remanded.