2023 IL App (4th) 220399

NO. 4-22-0399

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 10, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Woodford County |
| TYJUAN L. BROWN, | ) | No. 21CF107 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Michael L. Stroh, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justices Harris and Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1        Following a bench trial in the circuit court of Woodford County, the court found

defendant guilty of aggravated fleeing or attempting to elude a peace officer (aggravated fleeing)

(625 ILCS 5/11-204.1(a)(1) (West 2020)) and two counts of aggravated assault (720 ILCS

5/12-2(b)(4.1)(i) (West 2020)). The court found defendant not guilty of obstructing justice (720

ILCS 5/31-4(a) (West 2020)). For aggravated fleeing, the court sentenced defendant to 30 months'

probation, 180 days in jail, 300 hours of community service, a $500 fine, and court costs. The court

fined defendant $100 for both counts of aggravated assault and assessed court costs. Defendant

appeals, arguing (1) the court improperly required him to prove his affirmative defense of necessity

and (2) defendant did not knowingly waive his right to a jury trial on the aggravated assault

charges. We affirm.

¶ 2                                I. BACKGROUND

¶ 3            On July 23, 2021, Woodford County Sheriff's Deputy Sarah Lamlech observed defendant's car traveling 78 miles per hour in a 55-mile-per-hour zone. Lamlech initiated a traffic stop. Defendant, accompanied by his 16-year-old nephew in the front passenger's seat, pulled into a parking lot. Lamlech decided to search defendant's car based on the odor of marijuana coming from the vehicle and her observation of marijuana in an ashtray. Before telling defendant that she intended to search the car, Lamlech requested assistance from another deputy. Deputy Thomas McGuire responded to the scene. Squad car video footage with accompanying audio shows that defendant's encounter with Lamlech was nonconfrontational up to this point.

¶ 4            Lamlech then approached defendant's driver's side window, and McGuire went to defendant's passenger's side window. Video evidence shows that McGuire occasionally moved his hand toward where his gun was holstered, but he did not immediately withdraw his gun. Lamlech asked defendant to exit the car because of the marijuana she smelled. Defendant instead offered to "pour out" his marijuana. Lamlech again asked defendant if he would exit the car on his own so she could search the car. Defendant said "no," put his car in reverse, and began driving away. As Lamlech backed away from defendant's car and shouted "no" and "stop," McGuire briefly drew his weapon before putting it back into the holster.

¶ 5            Defendant drove out of the parking lot and onto a public road. Lamlech and McGuire entered their respective vehicles and pursued defendant at up to 120 miles per hour, portions of which were through a residential area. Lamlech and McGuire were unable to catch up with defendant, and they eventually ended the pursuit. Lamlech then went back to check on drivers who had been driven off the road during the pursuit. A warrant was issued for defendant's arrest, and he was arrested in Peoria on September 8, 2021.

¶ 6          The State initially charged defendant by information with two Class 4 felonies: aggravated fleeing (count I) and obstructing justice (count II). The State also charged defendant with two Class A misdemeanor counts of aggravated assault for nearly hitting Lamlech and McGuire as he backed up his car (counts III and IV). Counts III and IV contained errors, or at least ambiguities, on their face. Specifically, those counts alleged that Lamlech and McGuire, respectively, were "peace officer[s]" acting in the performance of their official duties. Such allegations seemingly implicated section 12-2(b)(4.1)(i) of the Criminal Code of 2012 (Code) (720 ILCS 5/12-2(b)(4.1)(i) (West 2020)), which addresses aggravated assault against a peace officer performing his or her official duties. A violation of that subsection is a Class 4 felony. 720 ILCS 5/12-2(d) (West 2020). However, counts III and IV alleged that defendant committed Class A misdemeanors by violating section 12-2(b)(4)(i) of the Code (720 ILCS 5/12-2(b)(4)(i) (West 2020)). A violation of that subsection of the statute is indeed a Class A misdemeanor. 720 ILCS 5/12-2(d) (West 2020). However, section 12-2(b)(4)(i) of the Code addresses assaults against community policing volunteers, private security officers, and utility workers. A grand jury subsequently returned a true bill realleging the felony counts of aggravated fleeing and obstructing justice.

¶ 7          On January 11, 2022, defendant—both orally and in writing—waived his right to a jury trial and elected a bench trial. Specifically, when defense counsel informed the court that defendant wished to waive his right to a jury trial, the court first reviewed the charges with defendant. In explaining the charges, the court said that the two aggravated assault counts were Class A misdemeanors. After reviewing the charges, the court noted it had been tendered a written jury waiver. The court confirmed that defendant's signature was on the jury waiver and that

defendant had reviewed the document with counsel before signing it. The court then explained defendant's rights:

> "Now you have an absolute right to a jury trial in this case. If you had a jury trial, 12 citizens of Woodford County would sit over there, they would listen to the evidence and they would determine your guilt or innocence and their decision on a verdict must be unanimous. You also have the right to a bench trial, and if you had a bench trial, I would listen to the evidence and I would make that determination, but if you plead guilty today, you will not have a trial of any kind either by a jury or by me. Do you understand that?"

Defendant said he understood. The court then told defendant that if he waived his right to a jury trial, he had a right to a bench trial, but he could not "ask for [his] right to a jury trial back." Defendant indicated he understood this. Defendant then confirmed with the court that he had discussed this matter with counsel, he was satisfied with counsel's representation, and he had enough time to talk to counsel about this decision. Defendant also told the court that nobody made any promises to get him to waive his right to a jury trial and nobody forced, threatened, or coerced him. Defendant acknowledged he was "doing this of [his] own free will." The court asked defendant, "Do you waive your right to a jury trial?" Defendant responded, "Yes, Judge." The court accepted defendant's jury waiver and set the matter for a bench trial on February 22, 2022.

¶ 8        On the day of trial, defendant filed a notice of intent to assert necessity as an affirmative defense. See 720 ILCS 5/7-13 (West 2020) (establishing a defense of necessity where "the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct"). At the beginning of trial, the court again told defendant

- 4 -

his two aggravated assault charges were Class A misdemeanors and that the other charges were Class 4 felonies. The court also informed defendant he did not "have to prove anything," he was "presumed to be innocent," and "the burden is on the State to prove [him] guilty."

¶ 9　　　　　The State introduced video footage and testimony from Lamlech and McGuire consistent with our recount of the evidence above (*supra* ¶¶ 3-5). After the State concluded its case-in-chief, the prosecutor asked to amend counts III and IV to cite section 12-2(b)(4.1)(i) of the Code (720 ILCS 5/12-2(b)(4.1)(i) (West 2020)), which addresses aggravated assaults against peace officers. The prosecutor asserted this amendment would correct a "typo" and would "conform with the facts that were elicited." Defense counsel responded, "That does appear to make more sense, Judge." Defense counsel indicated he had no objection to the amendments. Defense counsel added, "And, just for the record, I've always known who Deputy Sarah Lamlech is and Deputy McGuire [is]," "[a]s far as law enforcement." The parties and the court never discussed that these amendments could change the classification of the offenses charged in counts III and IV to Class 4 felonies. The record shows the parties and the court operated under the belief that the amended charges were still Class A misdemeanors.

¶ 10　　　　　Defendant testified on his own behalf. He admitted to speeding, possessing marijuana, and resisting the search of his vehicle. He also acknowledged pulling away from the deputies and leading them on a high-speed chase. Essentially, defendant testified his actions were justified because he believed the deputies were going to shoot him or his nephew for resisting a search of the car. To that end, defendant testified he saw Lamlech trying to pry the car door open and McGuire reaching for a gun. Defendant also saw his nephew "balled up" in a "fetal position." Defendant believed he had a "right to privacy," such that he could resist a search that lacked probable cause.

¶ 11     The court found defendant not guilty of obstructing justice, reasoning that the evidence did not "line[ ] up" with the State's theory on that charge. The court found defendant guilty of the other three offenses. As it pertains to this appeal, the court first explained that "[t]he State has the burden of proof" on the aggravated fleeing charge. After reciting the elements the State must prove for that charge, the court said, "In a nutshell, that has been proven beyond a reasonable doubt." The court then addressed and rejected defendant's claim he committed this offense due to necessity. The court asserted, "First off, the defense needs to show that the accused in this situation, [defendant], was without blame in occasioning or developing the situation." Because defendant was validly stopped for driving 23 miles per hour over the limit, the court concluded that "we can't say that the defendant was without blame in occasioning or developing the situation." The court further found that the videos introduced by the State showed that Lamlech "was polite and professional throughout the stop." According to the court, irrespective of whether defendant agreed with the law, Lamlech had probable cause to search defendant's vehicle based on the odor of marijuana coming from inside the car. The court noted that defendant almost hit two deputies, "peel[ed] out of a parking lot," traveled 120 miles per hour down a public highway, and ran "multiple vehicles off the road." The court said that defendant "did not reasonably believe" his conduct was necessary to avoid a greater injury than what his conduct could have caused. Thus, in the court's view, "[y]our defense of necessity fails to establish even one element of necessity."

¶ 12     Although defendant "only raised" a defense of necessity, the court noted that defendant's testimony suggested he believed he needed to defend himself from being shot. The court determined that video footage showed McGuire did not reach for his gun until defendant "almost hit [McGuire] with a car." Thus, the court found that self-defense did not apply.

¶ 13 The court also mentioned that defendant had no right to resist a peace officer, even if defendant believed the officer acted unlawfully. According to the court, defendant's redress for any constitutional violation would be to bring a legal challenge, not to "put other people in harm's way" on the street. In the court's view, the video evidence showed the deputies' behavior "in no way, shape, or form could be construed to be threatening" to defendant. Accordingly, the court found defendant guilty of aggravated fleeing.

¶ 14 The court then said the same reasoning applied to the two aggravated assault charges. The court identified the elements that "the State is obligated to prove" with respect to aggravated assault. The court found that the video evidence established defendant's guilt on those counts beyond a reasonable doubt.

¶ 15 At the sentencing hearing, the prosecutor asserted that defendant faced sentencing for one Class 4 felony (aggravated fleeing) and two Class A misdemeanors (aggravated assault). The State requested a sentence of two years in prison for the felony and a $1000 "fine on the two misdemeanors." Defense counsel asked for a probation sentence with 100 hours of public service. If the court determined that "some loss of freedom is necessary to get the point across," defense counsel urged the court to impose "jail time" rather than a prison sentence.

¶ 16 For aggravated fleeing, the court sentenced defendant to 30 months' probation, 180 days in jail, 300 hours of community service, a $500 fine, and court costs. Defense counsel then asked, "Judge, what about the misdemeanors?" The court responded, "The misdemeanors are going to be a $100 fine and costs and convictions on each one of those. Fines will be due within one year of today's date." The court clarified there would be no jail time on the misdemeanor convictions.

¶ 17        Defendant never filed a posttrial motion or a motion to reconsider the sentence. Defendant filed a notice of appeal within 30 days of the sentencing hearing.

¶ 18                         II. ANALYSIS

¶ 19             A. Burden of Proof Regarding the Necessity Defense

¶ 20        Defendant argues the trial court erroneously failed to require the State to disprove the necessity defense beyond a reasonable doubt. According to defendant, the court's comments show that the court improperly shifted the burden of proof to him. The State responds that defendant did not meet his initial burden with respect to the necessity defense, so the burden never shifted to the prosecution to disprove that defense.

¶ 21        Defendant recognizes he forfeited this issue for review by failing to raise it below. To circumvent forfeiture, defendant relies on the second prong of the plain-error doctrine, which applies where "a clear or obvious error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *People v. Jackson*, 2022 IL 127256, ¶ 19. "[E]rrors that fall under the purview of the second prong of the plain error rule are rare" (*Jackson*, 2022 IL 127256, ¶ 27), and "the defendant has the burden of persuading the court to excuse his forfeiture" (*Jackson*, 2022 IL 127256, ¶ 19). The initial step in our analysis is "to determine whether a clear or obvious error occurred." *Jackson*, 2022 IL 127256, ¶ 21.

¶ 22        A necessity defense has two elements: "(1) the person claiming the defense was without blame in occasioning or developing the situation, and (2) the person reasonably believed that his conduct was necessary to avoid a greater public or private injury than that which might reasonably have resulted from his conduct." *People v. Janik*, 127 Ill. 2d 390, 399 (1989). "[U]nless the State's evidence raises the issue involving the alleged defense, the defendant, to raise the issue, must present some evidence thereon." 720 ILCS 5/3-2(a) (West 2020). Once an affirmative

defense is raised, "the State must sustain the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all the other elements of the offense." 720 ILCS 5/3-2(b) (West 2020).

¶ 23      Here, immediately before trial started, the court told defendant: "You don't have to prove anything. You are presumed to be innocent, and the burden is on the State to prove you guilty." After the parties presented closing arguments, the court began its ruling by asserting that "[t]he State has the burden of proof" on the aggravated fleeing charge. After reciting the elements of aggravated fleeing the State had to prove, the court said, "In a nutshell, that has been proven beyond a reasonable doubt." Later, the court identified the elements "the State is obligated to prove" with respect to the aggravated assault charges. The court then found that the video evidence introduced by the State "establishes that *** without a doubt."

¶ 24      In arguing the trial court applied an improper burden of proof, defendant emphasizes two comments the court made when addressing the necessity defense. One comment was "First off, the defense needs to show that the accused in this situation, [defendant], was without blame in occasioning or developing the situation." The other comment was "Your defense of necessity fails to establish even one element of necessity." Defendant contends the court instead should have required the State to disprove the necessity defense beyond a reasonable doubt.

¶ 25      We determine defendant has not shown a clear or obvious error. "The trial court is presumed to know the law regarding the burden of proof and to apply it properly." *People v. Cameron*, 2012 IL App (3d) 110020, ¶ 28. Such presumption is rebutted only where "the record contains strong affirmative evidence to the contrary." *Cameron*, 2012 IL App (3d) 110020, ¶ 28. Here, considering the entirety of the court's ruling, the most reasonable interpretation is that the court found defendant did not meet his initial burden to present even "some evidence" to raise a

necessity defense. Thus, the State never had the burden to disprove that defense beyond a reasonable doubt. See 720 ILCS 5/3-2(b) (West 2020) (establishing that the State must disprove an affirmative defense if the defense is raised).

¶ 26 The State's case-in-chief provided no evidence supporting a necessity defense. Defendant then testified that he fled the traffic stop because he feared the deputies would shoot him or his nephew for resisting a search of the car. Notably, the record contains no evidence that even arguably could support the first element of the necessity defense—that defendant was "without blame in occasioning or developing the situation." *Janik*, 127 Ill. 2d at 399. The State introduced uncontradicted evidence that Lamlech lawfully stopped defendant's vehicle for speeding 23 miles per hour over the posted limit. The State also introduced uncontradicted evidence that Lamlech smelled marijuana in defendant's car and observed, in plain sight, what defendant admitted was marijuana. Unquestionably, those facts gave Lamlech the right to search defendant's car. See *People v. Hall*, 2023 IL App (4th) 220209, ¶ 24 (holding that probable cause existed to search a vehicle where an officer smelled cannabis and a passenger of the vehicle admitted to possessing cannabis). There was no evidence at trial that defendant was blameless when he sped and had unsealed marijuana in plain sight.

¶ 27 There also was no evidence supporting the second element of the necessity defense—that defendant "reasonably believed that his conduct was necessary to avoid a greater public or private injury than that which might reasonably have resulted from his conduct." *Janik*, 127 Ill. 2d at 399. A necessity defense requires that "the threat of harm was immediate and defendant's conduct was the sole option to avoid injury." *People v. Boston*, 2016 IL App (1st) 133497, ¶ 39. Here, defendant testified he believed the deputies would shoot him or his nephew for resisting a search of the vehicle. However, nearly running over the deputies and then driving

away at high speeds obviously was not defendant's sole option to avoid injury. Defendant could have avoided injury simply by allowing the deputies to search the car.

¶ 28       As the record contained no evidence even arguably supporting either element of a necessity defense, the burden never shifted to the State to disprove that defense. Thus, the comments defendant references from the trial court's ruling do not indicate that the court misapplied the burden of proof. Rather, the comments suggest the court appropriately determined the burden never shifted to the State.

¶ 29       In his reply brief, defendant proposes the trial court found he produced some evidence supporting his necessity defense. Defendant cites the court's comment that defendant had "not raised self-defense" but had "only raised a necessity" defense. Defendant reads too much into this comment. In context, the court seemingly used the word "raised" not in any technical sense but in the sense that defendant only argued necessity. Even if this isolated comment could be deemed a finding that the record contained some evidence supporting a necessity defense, the court also found that the State's video evidence contradicted the defense. Thus, the record does not contain "strong affirmative evidence" that the court applied an improper standard. *Cameron*, 2012 IL App (3d) 110020, ¶ 28.

¶ 30       Defendant cites cases where the appellate court reversed trial courts for applying incorrect burdens of proof. For example, in *People v. Devine*, 295 Ill. App. 3d 537, 544 (1998), the trial court incorrectly said in its ruling that the defense (1) had to establish reasonable doubt and (2) had to rebut the State's *prima facie* case. Unlike *Devine* and other cases defendant cites, the record here does not support, much less compel, a conclusion that the trial court misapplied the burden of proof.

¶ 31        Because we determine that defendant has not demonstrated a clear or obvious error, we hold that he has not sustained his burden under the plain-error doctrine.

¶ 32                            B. Validity of the Jury Trial Waiver

¶ 33        Defendant also contends he did not knowingly waive his right to a jury trial on the aggravated assault charges. Defendant reasons that (1) the trial court said before trial that defendant's jury waiver was irrevocable, (2) the midtrial amendments elevated the aggravated assault charges from Class A misdemeanors to Class 4 felonies, and (3) the court never sought a valid jury waiver as to those enhanced charges. Defendant recognizes he did not preserve this issue, but he invokes the second prong of the plain-error doctrine.

¶ 34        The State responds that there was no clear or obvious error. The State notes—and defendant acknowledges in his reply brief—that the trial court sentenced defendant on the aggravated assault counts as if they were misdemeanors. However, defendant points out that the State could file a *mandamus* action to correct the statutorily unauthorized sentences.

¶ 35        Both the federal and state constitutions protect the right to a jury trial. *People v. Bracey*, 213 Ill. 2d 265, 269 (2004). A defendant may waive that right, so long as such waiver is "knowingly and understandingly made." *Bracey*, 213 Ill. 2d at 269. Section 115-1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-1 (West 2020)) contemplates defendants executing written jury waivers. Nevertheless, a written jury waiver is merely "one means by which a defendant's intent may be established." *Bracey*, 213 Ill. 2d at 269. There is no precise formula for determining whether a defendant knowingly and understandingly waived the right to a jury trial, and each case turns on its own facts and circumstances. *People v. Frey*, 103 Ill. 2d 327, 332 (1984).

¶ 36        Here, defendant was charged with one count of aggravated fleeing (count I), one count of obstructing justice (count II), and two counts of aggravated assault (counts III and IV).

Counts I and II were charged as Class 4 felonies. Counts III and IV contained errors, or at least ambiguities, on their face. Counts III and IV alleged that the victims of the assaults were "peace officer[s]" acting in the performance of their official duties—which seemingly would mean the charges were Class 4 felonies pursuant to section 12-2(b)(4.1)(i) of the Code (720 ILCS 5/12-2(b)(4.1)(i) (West 2020)). However, counts III and IV alleged that defendant committed Class A misdemeanors by violating section 12-2(b)(4)(i) of the Code (720 ILCS 5/12-2(b)(4)(i) (West 2020)), which addresses assaults against community policing volunteers, private security officers, and utility workers. No one brought these issues to the trial court's attention before trial.

¶ 37        On January 11, 2022, defendant—both orally and in writing—waived his right to a jury trial and elected a bench trial. As detailed above (see *supra* ¶ 7), there is no doubt defendant knew and understood he was waiving his right to a jury trial on all four charges, at least as those charges were alleged at the time. Defendant maintains it was misleading for the trial court to tell him on January 11, 2022, that he could not ask for reinstatement of his right to a jury trial, as courts have discretion to allow defendants to withdraw a jury waiver. See *People v. McIntyre*, 2022 IL App (2d) 200535, ¶ 9 (labeling it "misleading" for a judge, when accepting a jury trial waiver, to tell a defendant he could not change his mind and take back the waiver). Nevertheless, a comment of this nature does not constitute second-prong plain error (*McIntyre*, 2022 IL App (2d) 200535, ¶ 12), and our supreme court has upheld jury waivers even where the trial court suggested the waiver was irrevocable (*People v. Tooles*, 177 Ill. 2d 462, 471 (1997)).

¶ 38        Defendant's bench trial proceeded on February 22, 2022. Once trial starts, a defendant no longer may request to withdraw a jury waiver. See *People v. Catalano*, 29 Ill. 2d 197, 203 (1963) ("[T]he authorities are uniform to the effect that a motion for withdrawal of waiver made after the commencement of the trial is not timely and should not be allowed."). If events at

a bench trial generate doubt as to whether a jury waiver was knowing and voluntary, the defendant's recourse is to request a mistrial. *People v. Williams*, 2016 IL App (3d) 130901, ¶ 26; *People v. Norris*, 62 Ill. App. 3d 228, 232-33 (1978).

¶ 39    Here, after the State rested its case-in-chief, the prosecutor sought to amend counts III and IV to correct a "typo" and to "conform with the facts that were elicited." See 725 ILCS 5/111-5 (West 2020) (authorizing amendments to the charging instrument "at any time" to correct formal defects). Specifically, the prosecutor requested to cite the subsection of the aggravated assault statute pertaining to peace officers. Rather than objecting to the amendments or moving for a mistrial, defense counsel responded, "That does appear to make more sense, Judge." Defense counsel also indicated he had no objection to the amendments. Defense counsel added, "And, just for the record, I've always known who Deputy Sarah Lamlech is and Deputy McGuire [is]," "[a]s far as law enforcement."

¶ 40    On appeal, defendant does not argue ineffective assistance of counsel for agreeing to the amendments. Defendant instead maintains that, after the trial court allowed the amendments, the court committed plain error by failing to procure a jury-trial waiver from defendant as to the amended counts III and IV.

¶ 41    Defendant relies heavily on *People v. Hernandez*, 409 Ill. App. 3d 294 (2011). In that case, the appellate court held that a defendant's November 2008 jury-trial waiver as to domestic battery charges did not extend to two counts of obstructing a peace officer that were added immediately before trial started in April 2009. *Hernandez*, 409 Ill. App. 3d at 295-96. Part of the appellate court's reasoning was that "[c]ommon sense says that a person must be at least generally aware of the charges he or she faces before he or she can knowingly and intelligently decide whether guilt for those charges should be determined by a jury or a judge." *Hernandez*, 409

Ill. App. 3d at 297. The court also deemed it "axiomatic that a waiver can apply only to existing charges." *Hernandez*, 409 Ill. App. 3d at 298.

¶ 42    *Hernandez*'s rule does not directly apply here, as the State did not add any charges after defendant validly waived his right to a jury trial. The question, then, is whether *Hernandez*'s reasoning should be extended to the facts of this case. We determine *Hernandez*'s reasoning does not apply here. The key fact in *Hernandez* was that the defendant could not have known the State would add charges after he waived his right to a jury trial. Thus, the *Hernandez* court determined the defendant should have been given the opportunity to decide whether he still wanted a bench trial in light of the additional charges. Here, by contrast, when defendant waived his right to a jury trial, he knew that Lamlech and McGuire were peace officers, as that was alleged in the original charging instrument. Later, with defense counsel's approval, the State amended charges during trial to cite a subsection of the applicable statute that was implicated by the original charging instrument's allegations. The factual and procedural differences between our case and *Hernandez* militate against applying *Hernandez*'s reasoning here. We reiterate that defendant may obtain plain-error relief only if "a clear or obvious error occurred." *Jackson*, 2022 IL 127256, ¶ 21. *Hernandez* is distinguishable, so the trial court did not commit a clear or obvious error by failing to procure another jury-trial waiver from defendant after the State amended counts III and IV.

¶ 43    Defendant emphasizes that the amendments to counts III and IV elevated the offenses from Class A misdemeanors to Class 4 felonies. Defendant also suggests the State could seek *mandamus* relief to increase his sentences. These arguments do not change our analysis of whether the trial court committed a clear or obvious error by failing to procure another jury-trial waiver from defendant after the State amended counts III and IV. The parties and the court assumed, albeit erroneously, that the amended counts III and IV were still Class A misdemeanors.

- 15 -

The court ultimately fined defendant $100 on both counts III and IV, which would be unauthorized sentences for felony convictions. See 730 ILCS 5/5-4.5-15(b) (West 2020) ("Neither a fine nor restitution shall be the sole disposition for a felony, and either or both may be imposed only in conjunction with another disposition."). Thus, defendant was sentenced for misdemeanors, not felonies, on counts III and IV.

¶ 44 Moreover, any error in sentencing does not render defendant's sentences void. See *People v. Castleberry*, 2015 IL 116916, ¶ 19 (holding that a statutorily unauthorized sentence is not void). Ordinarily, if the State wants to increase an unauthorized sentence, the State may seek a writ of *mandamus* from our supreme court. *Castleberry*, 2015 IL 116916, ¶¶ 26-27. Here, however, we see no realistic possibility of the State filing a *mandamus* petition, as the State admits in its brief that it induced the trial court to impose misdemeanor convictions on counts III and IV ("Defendant presently stands convicted of aggravated assault as Class A misdemeanors, as induced by the prosecution, with only $100 fines.").

¶ 45 Irrespective of the confusion below as to sentencing, our supreme court has explained that improper admonishments regarding sentencing consequences do not invalidate a jury waiver, as sentencing " 'is not a consequence of the election to waive a jury trial.' " *People v. Bannister*, 232 Ill. 2d 52, 69 (2008) (quoting *Horsman v. State*, 570 A.2d 354, 357 (Md. Ct. Spec. App. 1990)). "When a defendant waives the right to a jury trial, the pivotal knowledge that the defendant must understand—with its attendant consequences—is that the facts of the case will be determined by a judge and not a jury." *Bannister*, 232 Ill. 2d at 69. Here, the record confirms defendant knew and understood on January 11, 2022, when he waived his right to a jury trial on all four charges, that his case would be tried before a judge rather than a jury. Defendant also knew at that time that the State was alleging Lamlech and McGuire were peace officers. Pursuant to

*Bannister*, improper admonishments as to potential sentencing consequences did not invalidate defendant's jury-trial waiver.

¶ 46      In his reply brief, defendant cites *People v. Zajac*, 244 Ill. App. 3d 42 (1991), for his assertion that the amendments to counts III and IV "substantially altered the nature of the charges." Unlike the defendant in *Zajac*, defense counsel here did not object to the amendments as being improper substantive changes to the charging instrument. Rather, defense counsel said the amendments made sense, and he had no objection. Defense counsel confirmed he had "always known" that Lamlech and McGuire were "law enforcement" personnel. Again, defendant does not argue ineffective assistance of counsel for agreeing to the amendments to counts III and IV. Thus, the issue of whether the amendments effectuated formal versus substantive changes is not before us.

¶ 47      In closing, we note our puzzlement that defendant, who is represented by counsel, seeks a new trial that would subject him to harsher penalties—including imprisonment—if he were convicted. The video evidence of defendant fleeing from a traffic stop at high speeds seemingly would negate any defense to the charges of aggravated assault in the amended counts III and IV. Defendant received sentences of small fines and court costs on counts III and IV. It is not apparent why defendant would want a new trial on those counts, potentially exposing himself to a prison sentence, where *he benefitted* from the mistakes made below. We recognize that defendant presents a nonfrivolous argument that *Hernandez*'s reasoning could be extended to the facts of this case. However, we see no positive rationale for defendant raising that argument under these circumstances.

¶ 48                              III. CONCLUSION

¶ 49      For the reasons stated, we affirm the trial court's judgment.

¶ 50        Affirmed.

*People v. Brown*, 2023 IL App (4th) 220399

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Woodford County, No. 21-CF-107; the Hon. Michael L. Stroh, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Catherine K. Hart, and Edward J. Wittrig, of State Appellate Defender's Office, of Springfield, for appellant. |
| **Attorneys for Appellee:** | Gregory Minger, State's Attorney, of Eureka (Patrick Delfino, David J. Robinson, and Allison Paige Brooks, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |